**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kazue Swedberg, Civil No. 00-2421 (DWF/RLE)

Plaintiff,

v. **MEMORANDUM OPINION AND ORDER**

Emil Marotzke,

Defendant.

---

David S. Maring, Esq., Maring Williams, P.O. Box 795, Bismarck, North Dakota 58502-0795, counsel for Plaintiff.

John R. Clemency, Esq., Keriann M. Atencio, Esq., and Todd A. Burgess, Esq., Greenberg Traurig, LLP, 2375 East Camelback Road, 7th Floor, Phoenix, Arizona 85016; Patrick Robben, Esq., and Richard J. Nygaard, Rider Bennett, LLP, 333 7th Street, Suite 2000, Minneapolis, Minnesota 55402, counsel for Defendant.

---

## Introduction

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendant Emil Marotzke's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue or, in the alternative, to Transfer Venue. In her Complaint, Plaintiff Kazue Swedberg has asserted a claim for breach of contract. For the reasons set forth below, Marotzke's motion is denied.

## Background

Plaintiff Swedberg is a North Dakota resident who owns a corporation, Smoky's of West Fargo, Inc. ("Smoky's"), that operates a steakhouse in West Fargo, North Dakota. Defendant Emil Marotzke is an Arizona resident who has owned and operated businesses throughout the United States. Rudell Oppegard is a North Dakota resident who owned stock with Marotzke in a company called

Ridgeview Park, Inc.[1] Ridgeview Park owned and operated a recreational vehicle timeshare in Bullhead City, Arizona. Claude Oppegard is Rudell's son. Claude worked as a licensed insurance agent in Moorhead, Minnesota, for the time relevant to this suit.

Beyond the previously stated facts, the parties to this suit agree on very little with regard to the facts surrounding this litigation. In the late 1980s and the early 1990s, Claude Oppegard asserts that Marotzke met with himself and Rudell Oppegard in Moorhead, Minnesota, to discuss insurance matters related to Ridgeview Park. Claude's insurance agency at the time, Heartland Insurance Agency, provided coverage for Ridgeview Park. Claude asserts that Marotzke came to Minnesota from Arizona during that time period three or four times a year to meet with Rudell and visit Marotzke's relatives.

Claude asserts that, in the fall of 1993, Marotzke was in Moorhead, Minnesota, attempting to raise money for a casino venture in Nevada. Claude asserts that Marotzke asked him [Claude] whether he would be willing to loan Marotzke the funds or whether Claude knew of another person that would be willing to do so. Claude contends that Marotzke made clear to him the terms of the loan during this meeting. Finally, Claude asserts that he told Marotzke that he did not have the funds to loan Marotzke, but that he [Claude] might be able to borrow the funds from Obed Williamson.[2] Upon

---

[1] Ridgeview Park, Inc. and Ridgeview Management, Inc. are two separate business entities, but both Swedberg and Marotzke refer generally in their memoranda to these entities as "Ridgeview Park." The Court will differentiate the entities where it is possible to do so, but will otherwise refer to the businesses collectively as "Ridgeview Park."

[2] Although the exact role of Williamson is not set out in the legal memoranda, Williamson appears to be a business partner of Swedberg.

borrowing the funds, Claude would re-loan the money to Marotzke under the terms and conditions discussed at the meeting.

Williamson agreed to loan Claude the money and he provided Claude with a check from Smoky's in the amount of $100,000. Claude deposited the check in his Heartland Insurance Agency account and prepared a second check from that account payable to himself in the same amount. Claude then wrote on the back of the check "payable to Emil Marotzke" and endorsed the check in favor of Marotzke. Claude sent the check by mail from Moorhead, Minnesota, to Marotzke in Bullhead City, Arizona.

Every month from December 1993 to December 1994, payments of $1,250 were sent to Claude in Moorhead, Minnesota. The payments were drawn from Ridgeview Park's bank account. Claude took the checks and endorsed the checks payable to Smoky's or Williamson. No checks were received by Claude after December 1994.

In January 1994, Swedberg and Williamson assert that they traveled to Bullhead City to meet with Marotzke. Later that year, Swedberg asserts that she loaned $75,000 to Ridgeview Park at the request of Marotzke. In February 1995, Swedberg contends that Marotzke met with Swedberg and Williamson in West Fargo, North Dakota on two occasions. During those meetings, Swedberg asserts that Marotzke asked for $200,000 to purchase land in Bullhead City. In exchange for the money, Swedberg asserts that Marotzke told her that she would receive $375,000 worth of preferred stock in a company that had not yet been formed called K & R Corporation.[3] The $375,000 worth of stock

[3] Later, K & R Corporation was incorporated as K/R View Resort, Inc.

was to be made up of the $200,000 loan being requested, the $75,000 loan made in 1994, and the $100,000 loan in 1993.

Marotzke denies that he traveled to Minnesota to discuss insurance or any other business matters during the stated time period. Marotzke also asserts that the discussion between himself and Claude regarding the $100,000 transaction took place over the phone while Marotzke was in Arizona. Marotzke asserts that the $100,000 that gave rise to the payments was part of an agreement signed by Rudell Oppegard on behalf of Ridgeview Park and Marotzke denies that the agreement ever involved him in any personal capacity. Finally, Marotzke contends that all of the checks that were sent to Claude Oppegard were drawn on Ridgeview Park's account at the behest of Rudell Oppegard.

In 1996, a suit was filed in the United States District Court for the District of Minnesota titled *Ridgeview Park, Inc., et al. v. Anderson, et al.*, No. 3:96-CIV-966 (PAM/JGL). The suit was brought to enforce an agreement in which Rudell's sister and brother-in-law had allegedly agreed to transfer Rudell's stock in Ridgeview Park to Ridgeview Park. A trial in 1997 resulted in the restoration of Rudell's shares to Rudell. Later, Rudell Oppegard brought suit against Marotzke, Ridgeview Management, Inc., and Ridgeview Park, Inc. in the United States District Court for the District of Arizona. As a result of the proceedings in that case, a receiver was appointed to operate Ridgeview Park, Inc., and Ridgeview Management, Inc. However, before a receiver could be appointed Ridgeview Park, Inc., and Ridgeview Management, Inc., filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada.

When Marotzke testified at the Bankruptcy Plan Confirmation Hearing in Nevada, Marotzke denied that he owed the disputed $100,000 to K/R View Resort, Inc. Based on Marotzke's

testimony, the Bankruptcy Court approved an Amended Plan of Confirmation that treated Swedberg as a secured creditor with respect to the $75,000 and as an unsecured creditor with respect to the $200,000. However, Swedberg's claim for the $100,000 was denied by the court. In an attempt to recover the $100,000, Swedberg filed suit against Marotzke in the United States District Court for the District of Arizona.

The suit filed in Arizona alleged that the $100,000 that came from Smoky's was part of a $375,000 preferred stock investment that Swedberg made in K/R View Resort, Inc. Marotzke filed a Motion to Dismiss the suit in Arizona. While the motion was pending, Swedberg filed a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a). The Arizona suit was eventually dismissed without prejudice, but, before the suit was dismissed, Swedberg filed suit in Minnesota state court. The Minnesota state court action was then removed to the federal court.

**Discussion**

**I. Personal Jurisdiction**

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *See Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside

the pleadings; the court may inquire, by affidavits or otherwise, into the facts as they exist. *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735, n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *See Digi-Tel*, 89 F.3d at 522 (citing *Northrup King*, 51 F.3d at 1387). However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *See Wessels, Arnold & Handerson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *See Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's contacts must be more than "random," "fortuitous," or "attenuated." *Digi-Tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475). Instead, the contacts must result from the actions of the defendant itself that create a "substantial connection" with the forum state. *Digi-Tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In accordance with the basic principles of federal due process, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *See Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

The third factor distinguishes between specific and general jurisdiction. *See Digi-Tel*, 89 F.3d at 523, n.4 (citing *Wessels*, 65 F.3d at 1432, n.4). Constitutional law distinguishes between "general" and "specific" jurisdiction cases. *Valspar*, 495 N.W.2d at 411. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277,

1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 416, 418-19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction requires that defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

In the present matter, when viewing the evidence in the light most favorable to the Plaintiff, the record establishes that Marotzke is subject to specific personal jurisdiction in Minnesota. Claude Oppegard has alleged that the terms and conditions of the $100,000 transaction were negotiated in Moorhead, Minnesota. Although Marotzke denies that any such conversation took place while he was in Minnesota, Marotzke cannot deny that the payments due as a result of that transaction were sent to Claude Oppegard in Minnesota for over a year. In this action, Marotzke contends that those payments were made on behalf of Ridgeview Park at Rudell Oppegard's request. However, Marotzke has testified in the past that he received the $100,000 in the form of a personal loan. (*See* Affidavit of David S. Maring, ¶4, Ex. N, at 93-96.)

The Court finds that, based on the record, it is clear that Marotzke's contacts with Minnesota are neither "random," "fortuitous," nor "attenuated." *Digi-Tel*, 89 F.3d at 522, quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183. Marotzke's contacts with the State of Minnesota rise above the level of "minimum contacts" necessary for this court to find personal jurisdiction. *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158 (1945) (internal quotations omitted). Marotzke's conduct and connections with Minnesota are such that it should "reasonably anticipate being haled into court there" and as such Marotzke is subject to specific personal jurisdiction in Minnesota. *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

**II. Venue**

"The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441(a), 28 U.S.C.A. § 1441(a) . . . ." *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) (citations omitted). Section 1441 (a) states that the proper venue of an action that has been removed is "the district court of the United States for the district and division embracing the place where such action is pending."

In his submission to the Court, Marotzke relied on 28 U.S.C. § 1391 in support of his contention that venue is improper in Minnesota. However, 28 U.S.C. § 1441(a) is the appropriate standard for determining whether venue is proper in a suit that has been removed to federal court. Pursuant to 28 U.S.C. § 1441(a), venue is proper only in the district wherein lies the state court in which the action is brought. The Court finds that the District of Minnesota is the district embracing Clay County, and, therefore, venue is proper in Minnesota.

**III. Transfer to the District of Arizona**

Marotzke contends that, pursuant to 28 U.S.C. § 1404(a), the court should transfer this case to the United States District Court for the District of Arizona. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, transfer under 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853

F. Supp. 311, 315 (D. Minn. 1994). The court considers the convenience of the parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In considering these factors, the court must look to the particular circumstances of the case before it. *See Terra Intern., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

**A. Convenience of the Parties**

A presumption in favor of plaintiff's choice of forums exists. *See Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

In this case, Marotzke is attempting to transfer this case to the district in which he maintains his residence. However, Marotzke has not provided the Court with any evidence that a transfer of the case to the District of Arizona would do anything other than shift the inconvenience between the parties. Thus, the Court concludes that this factor weighs in favor of maintaining the action in Minnesota.

**B. Convenience of the Witnesses**

In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See Graff*, 33 F. Supp. 2d at 1121 (citing *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 732 (D. Minn. 1984)).

Neither party fully addressed this issue in their briefs, but it is apparent to the Court that the individuals most likely to serve as witnesses in this matter are the named parties to the suit, Obed Williamson, and Rudell and Claude Oppegard. Marotzke is a resident of Arizona, Swedberg and Rudell Oppegard are residents of North Dakota, and Claude Oppegard is a resident of Minnesota. Williamson's residence is unknown. Based on the residency of the witnesses and the close proximity of North Dakota to Minnesota, the Court finds that Minnesota is a more convenient forum for the witnesses.

**C. Interest of Justice**

A number of considerations which may be relevant in considering this factor are the relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgement. *See Graff*, 33 F. Supp. 2d at 1122.

The Court finds that Marotzke has not made a showing that the interests of justice weigh in favor of the transfer of this suit to the United States District Court for the District of Arizona. The plaintiff has chosen Minnesota as the forum in which to bring this suit. Both parties are experienced business persons with the financial resources to litigate this matter wherever it might be brought. In addition, the Court does not foresee any difficulties in providing the parties with a fair trial or in either party's ability to enforce a judgment once the matter has been resolved. Based on its analysis of these factors, the Court finds that the interests of justice do not weigh in favor of the transfer of this suit.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant Emil Marotzke's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue or, in the alternative, to Transfer Venue (Doc. No. 17) is **DENIED**.

Dated: April 15, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court